IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ALVIN PETERSON,

                                        Plaintiff,

v.                                              Civil Action No.
                                                9:04-CV-0797(DNH/DEP)

SHERYL MILLER, Nurse Practitioner;
AMY TOUSIGNANT, Nurse Administrator,

                                        Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ALVIN PETERSON, *pro se*

FOR DEFENDANTS:

HON. ANDREW M. CUOMO          MICHAEL McCARTIN, ESQ
Attorney General of                  Assistant Attorney General
the State of New York
The Capitol                          STEPHEN M. KERWIN, ESQ
Albany, NY 12224                     Assistant Attorney General

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

REPORT AND RECOMMENDATION

        Plaintiff Alvin Peterson, a former New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this action

pursuant to 42 U.S.C. § 1983 complaining of the deprivation of his

constitutional rights.  Plaintiff asserts that while incarcerated, he was denied

adequate medical treatment by the defendants, both of whom were nurses at

the facility in which he was confined at the relevant times, for kidney pain and

a foot rash, and denied the migraine medication of his choice, in violation of

his Eighth Amendment right to be free of cruel and unusual punishment.

Currently pending before the court is a motion by the defendants for

summary judgment dismissing plaintiff's complaint, both on the merits and

based upon qualified immunity.  Having carefully considered the record in

light of defendants' motion and finding that it presents no genuine issue of

material fact for trial, I recommend that defendants' motion, which plaintiff has

not opposed, be granted.

I.    BACKGROUND[1]

At the times relevant to his complaint, plaintiff was a prison inmate

entrusted to the custody of the New York State Department of Correctional

Services ("DOCS"), and confined within the Clinton Correctional Facility

("Clinton"), located in Dannemora, New York.  Plaintiff was released from

---

[1]    In light of the procedural posture of this case, the following facts are
presented in a light most favorable to the plaintiff, the non-moving party.  *See Samuels v.
Mockry,* 77 F.3d 34, 35 (2d Cir. 1996).  In this instance, the court's findings of fact are also
informed by defendants' statement pursuant to Northern District of New York Local Rule
7.1(a)(3), the contents of which are assumed to be true as a result of plaintiff's failure to
oppose defendants' motion.  *See* pp. 9-11, *post.*

DOCS custody on July 7, 2004.

While at Clinton, plaintiff was treated over time for a variety of medical ailments including, *inter alia,* complaints of pain in the area of his kidney, a foot rash condition which has on occasion been described as athlete's foot, and migraine headaches.  Among the medical personnel at Clinton who have acted as plaintiff's care providers are defendants Sheryl Miller, a nurse practitioner, and Amy Tousignant, who at the relevant times served as a nurse administrator.[2]

A.    Kidney Pain

According to his medical records, plaintiff complained to prison medical personnel of pain, the origin of which is not disclosed, in his right flank or kidney area on eleven separate occasions between July 16, 2001 and October 28, 2003.  Miller Decl. (Dkt. No. 25) ¶ 3.  On November 30, 2001, plaintiff lodged his fourth such complaint, describing his symptoms as including a "dull pain."  Miller Decl. (Dkt. No. 25) Exh. A at p. 128.  Plaintiff was seen by a prison doctor several times for evaluation of his complaints of kidney pain, and was provided with Motrin to address his discomfort.  *See,*

---

[2]      Defendant Tousignant, a registered nurse, is currently employed by the DOCS as Supervisor of Utilization Management and Quality Improvement.  Tousignant Decl. (Dkt. No. 25) ¶ 1.

3

*e.g., id.* at pp. 128, 133, 144, 171.  X-rays taken in or about July of 2002 were reviewed by a consulting radiologist, Dr. M. Browman, M.D., D.A.B.R., who concluded that plaintiff had "no suspicious calcifications" and a normal bowel gas pattern.  *Id.* at p. 92.  Plaintiff's x-rays were characterized by Dr. Browman as "normal abdominal radiographs."  *Id.*

     B.   <u>Foot Rash</u>

The record, including plaintiff's complaint, reveals that Peterson suffered from a chronic foot rash condition over at least the last two and one-half years of his incarceration as a New York State inmate.  *See*, *e.g.*, Complaint (Dkt. No. 1) ¶ 7.  Early on, plaintiff's foot rash condition was treated principally with Hydrocortisone cream, administered on a minimum of fifteen occasions between August 9, 2001 and January 30, 2004.  Miller Decl. (Dkt. No. 25) ¶ 8 and Exh. A at pp. 138-40, 155, 158.  Plaintiff was also provided with Vitamin E lotion for his condition at least eight times during 2003 and 2004.  *See*, *e.g.*, *id.*, Exh. A at pp. 160-62, 166.

_____In addition to these nonprescription remedies, plaintiff was prescribed at least four different types of medication to help combat his foot condition.  Miller Decl. (Dkt. No. 25) ¶ 9. On July 5, 2002, defendant Miller initially prescribed Selenium Sulfide (2.5% strength), a prescription medication used

to treat tinea versicolor, a type of fungal infection of the skin.  *Id.* ¶ 9.  Plaintiff reported on August 29, 2002 that the Selenium Sulfide had completely relieved his itch, although he continued to experience a rash on his feet. Miller Decl. (Dkt. No. 25) Exh. A at p. 144.  Three other prescription medications were subsequently administered in an effort to control plaintiff's foot condition, including 1) Temovate, a medication designed to relieve skin itching and inflammation of moderate to severe degrees; 2) Itraconazole, a drug utilized to combat fungal infections including aspergillosis, blastomycosis, histoplasmosis, and fungal infection localized to the toenails and fingernails (onychomycosis); and 3) Lamisil, another anti-fungal prescription medication used to combat foot conditions.  *Id.* ¶ 10 and Exh. A at pp. 186, 193.

     C.   <u>Migraine Headache Medication</u>

     The third element of plaintiff's deliberate medical indifference claim relates to the discontinuance of Fioricet, described as a strong, non-narcotic pain reliever used for relief of tension headache symptoms caused by muscle contractions in the head, neck and shoulder area.  Miller Decl. (Dkt. No. 25) ¶ 12.  The drug Fioricet contains butalbital, a sedative barbiturate, and acetaminophen, a non-aspirin pain reliever, as well as caffeine.  *Id.*

Prison officials, including defendant Miller, prescribed Fioricet to the plaintiff on several occasions prior to March 29, 2004.  *See, e.g.,* Miller Decl. (Dkt. No. 25) Exh. A at pp. 146, 153, 186.  After learning on March 29, 2004 that plaintiff had accumulated four tablets of Fioricet on his person, while asking medical personnel for yet another two tablets of the same medication, and, upon further investigation, learning that another inmate locked in the same area as plaintiff had thirty Fioricet tablets stockpiled in his cell, security staff at Clinton requested that medical personnel discontinue providing the drug to the plaintiff.  Miller Decl. (Dkt. No. 25) ¶ 13.  Defendant Miller and other medical personnel complied, substituting instead a prescription for Motrin 600 mg, a pain reliever much more potent than the over-the-counter medication known by the same name, to address plaintiff's headaches.  *Id.* ¶ 14 and Exh. A. at p. 191.

A month later, on May 4, 2004, defendant Miller prescribed Naproxen, a non-steroidal anti-inflammatory drug utilized for the management of moderate pain, fever, and inflammation through reduction of levels of prostaglandins, for plaintiff's migraine headaches.  Miller Decl. (Dkt. No. 25) ¶ 15.  Following complaints by the plaintiff that the Naproxen was not working well to control his migraine headaches, defendant Miller replaced that drug with Inderal, a

6

medication specifically designed for the treatment of migraine headaches, among other ailments.  *Id.* ¶ 16 and Exh. A at p. 193.  Plaintiff continued on the Inderal migraine medication until shortly before leaving DOCS custody. *Id.* at ¶ 16 and Exh. A at p. 197.

One of plaintiff's complaints concerns the failure of prison officials to resume his Fioricet as recommended by a cardiac consultant following its discontinuance.  That portion of plaintiff's complaint relates to a consultation which occurred on June 2, 2004, at defendant Miller's recommendation, resulting in a report that the cardiologist "would [discontinue] Inderal & resume Norvasc 5 QD & Fioricet."[3]  Miller Decl. (Dkt. No. 25) Exh. A at p. 87. That recommendation was not followed in light of the finding of security personnel at the facility regarding plaintiff's "saving" of Fioricet tablets for later use and suspected conveyance of Fioricet tablets to a fellow inmate.  Miller Decl. (Dkt. No. 25) ¶ 18 and Exh. A at p. 187.

II.   PROCEDURAL HISTORY

After exhausting available administrative remedies, plaintiff commenced this action on July 8, 2004.  Dkt. No. 1.  Plaintiff's complaint asserts three separate causes of action, all of which relate to defendants' alleged failure to

---

[3]   Norvasc is a medication used to treat high blood pressure and angina.  Miller Decl. (Dkt. No. 25) ¶ 17.

provide him with proper medical treatment for his various medical conditions. Named as defendants in the action are Nurse Practitioner Sheryl Miller, and Nurse Administrator Amy Tousignant. *Id.* ¶ 3.  As relief, plaintiff seeks recovery of $750,000 in compensatory damages and $1,500,000 in punitive damages. *Id.*

On March 27, 2006, following the close of discovery, defendants moved seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 25.  In their motion, defendants argue that 1) plaintiff's deliberate indifference claim is legally deficient, based both on the lack of a showing that he suffered from a serious medical condition and his failure to establish that either of the defendants was deliberately indifferent to any such condition; 2) plaintiff has failed to demonstrate the personal involvement of defendant Tousignant in the matters complained of; and 3) in any event, both defendants are entitled to qualified immunity.  *Id.*  Defendants' motion, which plaintiff has not opposed, is now ripe for determination and has been referred to me for the issuance of a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B) and Northern District of New York Local Rule 72.3(c). *See also* Fed. R. Civ. P. 72(b).[4]

---

[4]      A prior action brought by the plaintiff in this court pursuant to 42 U.S.C. § 1983 against various DOCS employees at Clinton, *Peterson v. Lacy, at al.,* 9:03-CV-1226 (DNH/RFT) (N.D.N.Y., filed 2003), was dismissed, on recommendation of United States

8

III.   DISCUSSION

    A.   Failure to Respond

The first issue to be addressed is the legal significance, if any, of

plaintiff's failure to oppose defendants' summary judgment motion, and

specifically whether that failure automatically entitles defendants to dismissal

based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the
> Court determines that the moving party has met its
> burden to demonstrate entitlement to the relief
> requested therein, the non-moving party's failure to file
> or serve any papers as required by this Rule shall be
> deemed as consent to the granting or denial of the
> motion, as the case may be, unless good cause is
> shown.  N.D.N.Y.L.R. 7.1(b)(3).

While recognizing that *pro se* plaintiffs are entitled to special latitude when

defending against summary judgment motions, *see Jemzura v. Public Serv.*

---

Magistrate Judge Randolph F. Treece, on February 27, 2006, based upon plaintiff's failure
to comply with the requirement that he notify the court of any change of address.  9:03-CV-
1226, Dkt. Nos. 52, 54; *see also* Northern District of New York Local Rules 10.1(b)(2) and
41.2(b).   In this case, plaintiff similarly has failed to notify the court of any change of
address since his apparent release from DOCS custody.  Based upon information received
in connection with 9:03-CV-1226, the court has nonetheless adjusted its records to reflect
a current address for the plaintiff in East Elmhurst, New York.  It appears from
correspondence forwarded in the *Peterson v. Lacy* case to the plaintiff at that address but
returned as undeliverable, *see* 9:03-CV-1226, Dkt. No. 63, however, that plaintiff may have
again moved without notifying the court and defendants' counsel of his change of
circumstances, thereby making it impossible for the court to communicate with him
regarding his action and, if true, providing an independent basis for dismissal of his
complaint.  *See* Northern District of New York Local Rules 10.1(b)(2) and 41.2(b).

*Comm'n*, 961 F. Supp. 406, 415 (N.D.N.Y. 1997) (McAvoy, C.J.), courts in

this district have found it appropriate to grant a dispositive motion pursuant to

Local Rule 7.1(b)(3) based upon a *pro se* plaintiff's failure to respond.

*Robinson v. Delgado*, No. 96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May

22, 1998) (Pooler, D.J. & Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733,

1997 WL 665551, at *1 (N.D.N.Y. Oct. 23, 1997) (Pooler, D.J. & Hurd, M.J.);

*Wilmer v. Torian*, 980 F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, D.J. &

Hurd, M.J.).  Before such an unopposed motion can be granted, however, the

court must review the motion to determine whether it is facially meritorious.

*See Allen v. Comprehensive Analytical Group, Inc*., 140 F. Supp. 2d 229,

231-32 (N.D.N.Y. 2001) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d

542, 545-46 (N.D.N.Y. 2000) (Kahn, J.).

While a party's failure to properly oppose an adversary's dispositive

motion thus does not assure that the motion, however lacking in merit, will be

granted, that failure is not without consequences.  By opting not to submit

papers in opposition to the motion, plaintiff has left the facts set forth in

defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this

district have uniformly enforced Local Rule 7.1(a)(3) and its predecessor,

Local Rule 7.1(f), by deeming facts set forth in a statement of material facts

not in dispute to have been admitted based upon an opposing party's failure

10

to properly respond to that statement.[5]  *See*, *e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).  I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

### B.    Summary Judgment Standard

Summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Under that provision, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of Hartford v. Old*

---

[5]       Local Rule 7.1(a)(3) provides that "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3) (emphasis omitted).

*Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is

"material," for purposes of this inquiry, if it "might affect the outcome of the

suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510;

*see also Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such that

a reasonable jury could return a verdict for the nonmoving party." *Anderson*,

477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs are entitled to

special latitude when defending against summary judgment motions, they

must establish more than mere "metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.

Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615,

620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se*

plaintiff understood nature of summary judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact to

be decided with respect to any essential element of the claim in issue; the

failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S.

at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.  Summary

judgment is inappropriate where "review of the record reveals sufficient

evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia*

*v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (stating that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

     C.    <u>Eighth Amendment Claims</u>

Plaintiff asserts three causes of action in his complaint.  First, plaintiff avers that defendants violated his Eighth Amendment rights when "they failed to provide adequate medical attention and treatment for two and one half years for his complaints of pain in his left kidney area, and rashes on his feet." Complaint (Dkt. No. 1) ¶ 7.  Plaintiff next contends that defendants violated his Eighth Amendment rights by discontinuing the Fioricet migraine medication and failing to prescribe a beneficial medication. *Id.*  Finally, the plaintiff claims that the defendants violated his Eighth Amendment rights by disregarding the order of the cardiologist to re-prescribe the Fioricet migraine medication.  *Id.*

Plaintiff's medical indifference claims are properly analyzed against the backdrop of a body of well-established Eighth Amendment jurisprudence. The Eighth Amendment prohibits the imposition of cruel and unusual punishments, including those that involve the "unnecessary and wanton infliction of pain" and are incompatible with "the evolving standards of

13

decency that mark the progress of a maturing society." *Estelle v. Gamble*,

429 U.S. 97, 102-03, 97 S. Ct. 285, 290-91 (1976) (quotations omitted).

While the Eighth Amendment does not mandate comfortable prisons, neither

does it tolerate inhumane treatment of those in confinement; thus the

conditions of an inmate's confinement are subject to Eighth Amendment

scrutiny. *Farmer v. Brennan,* 511 U.S. 825, 832, 114 S. Ct. 1970, 1976

(1994) (citing *Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S. Ct. 2392, 2400

(1981)).

A claim alleging that prison officials have violated the Eighth

Amendment by their failure to provide adequate medical care must satisfy

both an objective and a subjective requirement – the medical need must be

"sufficiently serious" from an objective point of view, and the plaintiff must

demonstrate that prison officials acted subjectively with "deliberate

indifference." *See Leach v. Dufrain*, 103 F. Supp. 2d 542, 546 (N.D.N.Y.

2000) (Kahn, J.) (citing *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321

(1991)); *Waldo v. Goord*, No. 97-CV-1385, 1998 WL 713809, at *2 (N.D.N.Y.

Oct. 1, 1998) (Kahn, D.J. and Homer, M.J.).  Deliberate indifference exists if

an official "knows of and disregards an excessive risk to inmate health or

safety; the official must both be aware of facts from which the inference could

be drawn that a substantial risk of serious harm exists, and he must also

14

draw the inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103

F. Supp. 2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713909, at * 2 (same).

1.   <u>Serious Medical Need</u>

To establish a constitutionally cognizable claim of deliberate medical

indifference under the Eighth Amendment, a plaintiff must initially allege a

deprivation involving a medical need which is, in objective terms, "'sufficiently

serious.'"   *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) (citing *Wilson*,

501 U.S. at 298, 111 S. Ct. at 2324), *cert. denied sub nom.*, *Foote v.*

*Hathaway*, 513 U.S. 1154, 115 S. Ct. 1108 (1995).  A medical need is serious

for constitutional purposes if it presents "'a condition of urgency' that may

result in 'degeneration' or 'extreme pain.'"   *Chance v. Armstrong*, 143 F.3d

698, 702 (2d Cir. 1998) (citations omitted).  A serious medical need can also

exist where "'failure to treat a prisoner's condition could result in further

significant injury or the unnecessary and wanton infliction of pain'"; since

medical conditions vary in severity, a decision to leave a condition untreated

may or may not be unconstitutional, depending on the facts*.  Harrison v.*

*Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000) (quoting, *inter alia*, *Chance*).

Relevant factors in making this determination include injury that a

"'reasonable doctor or patient would find important and worthy of comment or

treatment,'" a condition that "'significantly affects'" a prisoner's daily activities,

15

or causes "'chronic and substantial pain.'"  *Chance*, 143 F.3d at 701 (citations omitted); *LaFave v. Clinton County*, No. 00CV744, 2002 WL 31309244, at *2-3 (N.D.N.Y. Apr. 3, 2002) (Sharpe, M.J.), *adopted*, No. 00-CV-744, Dkt. No. 27 (N.D.N.Y. June 20, 2002) (Hurd, D.J.).

                              a.    Kidney Pain

According to his medical records, plaintiff complained to prison officials of pain in his kidney area over a period of two and one half years.  Those records show that Peterson communicated those complaints to the medical staff, and as a result was seen on eleven occasions.  Miller Decl. (Dkt. No. 25) ¶¶ 4, 6.  Plaintiff described this pain as "dull pain."  Miller Decl. (Dkt. No. 25) Exh. A at p. 128.

Having carefully reviewed plaintiff's medical records, I find that no reasonable factfinder could conclude that his complaints of back or kidney pain arose to a level of constitutional significance, demonstrating the requisite level of "death, degeneration, or extreme pain."  *Hathaway*, 37 F.3d at 66; *see also Salaam v. Adams*, No. 03-CV-0517, 2006 WL 2827687, at * 10 (N.D.N.Y. Sept. 29, 2006) (Kahn, D.J. and Lowe, M.J.) (back pain that requires treatment with pain relievers and physical therapy was not a sufficiently serious medical need for purposes of the Eighth Amendment). Since at no time did plaintiff describe his pain in terms which would equate to

"urgent," "debilitating," or "extreme", no reasonable factfinder could conclude that the condition constituted a sufficiently serious medical need to trigger the protections of the Eighth Amendment.

b.    Foot Rash

Plaintiff alleges, and his medical records bear out, that over a lengthy period of time he registered multiple complaints regarding a foot rash condition.  Those records, however, fail to suggest that the rash increased in severity over time or that because of it, plaintiff suffered from a condition capable of producing "death, degeneration, or extreme pain."  *Hathaway*, 37 F.3d at 66.  Indeed, plaintiff's records reflect that while the rash persisted, the itch associated with it was relieved by medication provided to the plaintiff. Miller Decl. (Dkt. No. 25) ¶ 9 and Exh. A at p. 144.  Under these circumstances, once again, no reasonable factfinder could conclude that during the relevant period, plaintiff's foot condition rose to a level of constitutional significance.  *See Smith v. Nash*, No. 04-CV-0074, 2006 WL 2806464, at *4-5 (N.D.N.Y. Sept. 28, 2006) (Kahn, D.J. and Homer, M.J.) (arthritis pain for which plaintiff was being treated with medication, and of which plaintiff did not complain of any pain, was not a sufficiently serious medical need).

17

c.    Migraine Headaches

Plaintiff's complaint also claims a failure on the part of the defendants to properly medicate and otherwise treat his migraine headaches, causing him to needlessly suffer.  Neither plaintiff's complaint nor his medical records are particularly informative as to the specifics regarding his migraine headaches, including their severity, duration, and degree.  At most, plaintiff's medical records reveal that in March of 2004, plaintiff noted he "generally" suffered from headaches twice a week, and in April of 2004, his headaches were "bad" and generally started late at night.  Miller Decl. (Dkt. No. 25) Exh. A at pp. 186, 189.  While the court is therefore disadvantaged on this score, this particular issue is not appropriately resolved on summary judgment, since such a condition has, on occasion, been found by other courts to represent a sufficiently serious potential medical need as to survive a motion for summary judgment attacking the sufficiency of a plaintiff's showing in this regard.[6]  *See*, *e.g.*, *Moriarity v. Neubould*, No. 02CV1662, 2004 WL 288807, at *2 n.2 (D. Conn. Feb. 10, 2004) (suggesting that plaintiff's migraine headaches constituted a sufficiently serious condition to warrant Eighth Amendment protection since they can be "extremely painful and debilitating"); *O'Bryan v.*

_____

[6]    Defendants have not argued that plaintiff's migraine headaches do not constitute a sufficiently serious medical condition to warrant the Eighth Amendment protections, and I have therefore not assumed otherwise.

18

*Sedgwick County*, No. 98-3308, 2000 WL 882516, at *5 (D. Kan. June 12,

2000) (assuming plaintiff's migraine headaches, for which he was prescribed

medication, comprised a sufficiently serious medical need under the Eighth

Amendment); *Medcalf v. State of Kansas*, 626 F. Supp. 1179, 1183 (D. Kan.

1986) (finding that deceased prisoner, who consistently complained of severe

headaches, nausea and vomiting, exhibited sufficiently severe medical

symptoms for the court to conclude that administrator of prisoner's estate had

stated a claim for relief under section 1983 and the Eighth Amendment).

### 2.     Deliberate Indifference

Deliberate indifference, in a constitutional sense, exists if an official

knows of and disregards an excessive risk to inmate health or safety; the

official must "both be aware of facts from which the inference could be drawn

that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979; *Leach*, 103 F. Supp.

2d at 546 (citing *Farmer*); *Waldo*, 1998 WL 713809, at *2 (same).

It is well-established that mere disagreement with a prescribed course

of treatment, or even a claim that negligence or medical malpractice has

occurred, does not provide a basis to find a violation of the Eighth

Amendment. *Estelle*, 429 U.S. at 105-06, 97 S. Ct. at 291-92; *Chance*, 143

F.3d at 703; *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d

896 (2d Cir.), *cert. denied*, 506 U.S. 1040, 113 S. Ct. 828 (1992).  The

question of what diagnostic techniques and treatments should be

administered to an inmate is a "classic example of a matter for medical

judgment"; accordingly, prison medical personnel are vested with broad

discretion to determine what method of care and treatment to provide to their

patients.  *Estelle*, 429 U.S. at 107, 97 S. Ct. at 293; *Chance*, 143 F.3d at 703;

*Rosales v. Coughlin*, 10 F. Supp. 2d 261, 264 (W.D.N.Y. 1998); *see also*

*Perez v. Hawk*, 302 F. Supp. 2d 9, 21 (E.D.N.Y. 2004) (noting that "treatment

of a prisoner's medication condition generally defeats a claim of deliberate

indifference") (quotations omitted).

### a.    Kidney Pain

Plaintiff's medical records show that he complained of pain in the area

of his kidney eleven times between July 16, 2001 and October 28, 2003.

Miller Decl. (Dkt. No. 25) ¶ 3.  Defendant was given Motrin to alleviate his

discomfort, *see, e.g., id.*, Exh. A at pp. 128, 133, 144, 171, and was seen by

a medical doctor on several of those occasions.  Miller Decl. (Dkt. No. 25) ¶ 3

and Exh. A at pp. 133, 144, 171.  As a general matter, the record fails to

disclose any failure on the part of medical officials at Clinton to respond to his

pain complaints.

Focusing on the involvement of defendant Miller, the record supports a

20

finding that she was made aware of the plaintiff's kidney pain through plaintiff's complaints to her on July 5, 2002 – a fact which she readily acknowledges.  On that one and only occasion when defendant Miller saw the plaintiff regarding his pain complaints, she arranged for an outside radiologist to review x-rays of the plaintiff's back.  Miller Decl. (Dkt. No. 25) ¶¶ 4, 5.  Those x-rays were determined to be negative.  *Id.* at ¶ 5.  After the x-rays were taken, defendant Miller had no contact with the plaintiff regarding the condition.  The record therefore fails to disclose any evidence from which a reasonable factfinder could conclude that defendant Miller was aware of but deliberately indifferent to plaintiff's kidney condition.

While the record discloses at least some minimal involvement on the part of defendant Miller in the treatment of plaintiff's kidney pain, there is no evidence from the record currently before the court of any involvement on the part of defendant Tousignant in connection with care or treatment for that complaint.  Personal involvement of a defendant in an alleged constitutional deprivation is a prerequisite to an award of damages under section 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir. 1994) (citing *Moffitt v. Town of Brookfield,* 950 F.2d 880, 885 (2d Cir. 1991) and *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir. 1977), *cert. denied*, 434 U.S. 1087, 98 S. Ct. 1282 (1978)).  In order to prevail on a section 1983 cause of action against an

individual, a plaintiff must show some tangible connection between the

constitutional violation alleged and that particular defendant.  *See Bass v.*

*Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

Although plaintiff's complaint is silent on this issue, it may be that

plaintiff asserts claims against defendant Tousignant in her administrative

capacity as a nurse administrator.  A supervisor, however, cannot be liable

for damages under section 1983 solely by virtue of being a supervisor – there

is no *respondeat superior* liability under section 1983.  *Richardson v. Goord*,

347 F.3d 431, 435 (2d Cir. 2003); *Wright*, 21 F.3d at 501.  A supervisory

official can, however, be liable in one of several ways: 1) the supervisor may

have directly participated in the challenged conduct; 2) the supervisor, after

learning of the violation through a report or appeal, may have failed to

remedy the wrong; 3) the supervisor may have created or allowed to continue

a policy or custom under which unconstitutional practices occurred; 4) the

supervisor may have been grossly negligent in managing the subordinates

who caused the unlawful event; or 5) the supervisor may have failed to act on

information indicating that unconstitutional acts were occurring.  *Richardson*,

347 F.3d at 435; *Wright*, 21 F.3d at 501; *Williams v. Smith*, 781 F.2d 319,

323-24 (2d Cir. 1986).  Even under this test the record fails to disclose any

basis for finding defendant Tousignant liable with regard to plaintiff's kidney

condition.  Accordingly, I recommend that the portion of plaintiff's deliberate indifference claim against defendant Tousignant, related to the treatment of his kidney pain, be dismissed on this basis.

b.   Foot Rash

The record reflects that both defendants were subjectively aware of plaintiff's foot rash.  Plaintiff was seen on February 11, 2004 by defendant Tousignant, complaining of a rash on his feet.  Tousignant Decl. (Dkt. No. 25) ¶ 4; Miller Decl. (Dkt. No. 25) Exh. A at p. 180.  Defendant Tousignant reports that on that date she discussed with another nurse at the facility the care and treatment of plaintiff's foot condition, and was of the opinion that the treatment was appropriate.  Tousignant Dec. (Dkt. No. 25) ¶ 4.  While defendant Tousignant was aware of the plaintiff's foot rash condition, there was no evidence in the record demonstrating her deliberate indifference to that condition.  I therefore recommend dismissal of plaintiff's foot rash indifference claim as against defendant Tousignant.

The record also reflects that defendant Miller was aware of, and indeed had a more active role in caring for, plaintiff's foot condition.   The medical records associated with defendant Miller's care and treatment for that condition reflect significant efforts on her part, through administering of various prescription and non-prescription medications, to control plaintiff's

23

condition and to relieve the itch associated with it.  While plaintiff's quarrel

appears to stem from his frustration over the inability to cure his rash

condition, this without more fails to establish a constitutional violation.  *See*,

*e.g.*, *Armour v. Herman*, No. 1:05CV295, 2005 WL 2977761, at *3 (N.D. Ind.

Nov. 4, 2005) ("The Eighth Amendment does not require medical success . . .

."); *Ramos v. Artuz*, No. 00 Civ. 0149, 2003 WL 342347, at *9 (S.D.N.Y. Feb.

14, 2003) (indicating that an unsuccessful course of treatment does not

support a finding of deliberate indifference); *see also Moolenaar v.*

*Champagne*, No. 03-CV-1464, 2006 WL 2795339, at *7 (N.D.N.Y. Sept. 26,

2006) (Kahn, D.J. and Peebles, M.J.) (plaintiff's complaints of pain resulting

from degenerative disc disease, a chronic ailment sustained by many

individuals and treated with exercise, pain medication, and physical therapy,

with which plaintiff was treated, did not give rise to a valid deliberate

indifference claim).  Based upon my review of the records associated with

that defendant Miller's treatment, I am unable to discern any basis upon

which a reasonable factfinder could conclude that defendant Miller was

inattentive and deliberately indifferent to plaintiff's foot rash condition.

      c.    <u>Migraine Headaches</u>

     The treatment administered by medical personnel with respect to

plaintiff's migraines similarly belies any claim of deliberate indifference to his

medical needs.  It is true that both defendants were aware of plaintiff's prescription of Fioricet and his desire to continue with that medication.  *See, e.g.,* Miller Decl. (Dkt. No. 25) ¶ 13; Tousignant Decl. (Dkt. No. 25) ¶ 5. Plaintiff's complaint in this regard stems from the failure to continue prescribing his pain medication of choice; that decision, however, was not made by the defendants, who instead were merely following directives from security personnel at the facility to discontinue the prescription drug in light of plaintiff's stockpiling and at least the suspected potential for having sold or given the drugs to fellow inmates.  Such legitimate security concerns can provide a basis for discontinuing or denying a treatment, especially when, as in this case, adequate alternative measures are taken.  *See*, *e.g.*, *Kosilek v. Maloney*, 221 F. Supp. 2d 156, 161 (D. Mass. 2002) (stating that the duty of prison officials to protect the safety of both inmates and prison staff "is a factor that may properly be considered in prescribing medical care"); *Hawley v. Evans*, 716 F. Supp. 601, 604 (N.D. Ga. 1989) (noting that as long as prison system abides by reasonable medical practices, whether to permit a prisoner to be treated with experimental drugs is within the discretion of the state officials, as "jail authorities have a legitimate security concern in limiting the exposure of inmates to drugs").

In this instance, alternative efforts were taken by prison medical officials

25

to address plaintiff's pain complaints.  After termination of the Fioricet in or about late March, 2004, plaintiff was written a prescription for Motrin 600 mg, a strong pain reliever.  Miller Decl. (Dkt. No. 25) ¶ 14 and Exh. A at p. 191. That was followed with a prescription on May 4, 2004 for Naproxen, another non-steroidal anti-inflammatory drug.  Following a determination that the Naproxen was not working well enough to treat plaintiff's headaches, defendant Miller prescribed Inderal, a medication specifically designed for such purposes.  Miller Decl. (Dkt. No. 25) ¶ 16 and Exh. A at p. 193.

In sum, plaintiff's medical records reflect that his migraine headaches were treated with three different prescription pain reliever medications. "[T]reatment of a prisoner's medical condition 'generally defeats a claim of deliberate indifference.'"  *Perez,* 302 F. Supp.2d at 21 (quoting *Wells v. Franzen*, 777 F.2d 1258, 1264 (7th Cir. 1985)).  In this instance plaintiff's complaint represents nothing more than a disagreement with prison officials' choice of treatments, a matter which does not arise to a level of medical deliberate indifference.  *Estelle,* 429 U.S. at 105-06, 97 S. Ct. at 291-92; *see also Chance*, 143 F.3d at 703.  Accordingly, I find that plaintiff has not established medical deliberate indifference on the part of either of the

defendants to his migraine medical condition.[7]

## IV.   SUMMARY AND RECOMMENDATION

Plaintiff's complaint claims deliberate indifference on the part of defendants to three separate conditions, including pain in the region of his kidney, a foot rash, and migraine headaches. Because the first two of those three conditions are insufficiently serious, either separately or in combination, to trigger the Eighth Amendment's cruel and unusual punishment protections, I recommend dismissal of those claims on this basis. Additionally, having carefully reviewed the available records associated with plaintiff's medical treatment while an inmate at Clinton, I find no evidence from which a reasonable factfinder could conclude that either of the defendants was deliberately indifferent to plaintiff's medical conditions even assuming, *arguendo*, that they were sufficiently serious to implicate the Eighth Amendment. Finally, in light of my recommendations on the merits, I find it unnecessary to address defendants' additional argument that they are entitled to qualified immunity.[8]

---

[7]      The evidence reflects that defendant Tousignant did have at least minimal awareness of an involvement in the decision to discontinue his Fioricet medication and of plaintiff's quarrel with that determination. *See e.g.,* Tousignant Decl. (Dkt. No. 25) ¶ 5. I therefore recommend against dismissal of plaintiff's migraine headache claim as against defendant Tousignant on the independent basis of lack of personal involvement.

[8]      The first step in the qualified immunity analysis requires a threshold determination of whether plaintiff has facially established a constitutional violation. *Harhay*

Based upon the foregoing, it is hereby,

RECOMMENDED, that defendants' motion for summary judgment (Dkt. No. 25) be GRANTED, and that plaintiff's complaint be DISMISSED in all respects.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the Clerk of the Court serve a copy of this report and recommendation upon the parties in accordance with the court's local rules.

Dated:     April 27, 2007
           Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

---

*v. Town of Ellington Bd. of Educ.,* 323 F.3d 206, 211 (2d Cir. 2003).  Only if the answer to that inquiry is in the affirmative must the court then turn its focus to whether the right in issue was clearly established at the time of the alleged violation, and if so whether it was objectively reasonable for the defendant to believe that his or her actions did not violate any such clearly established right.  *Id.* (citing *Saucier v. Katz,* 533 U.S. 194, 201-02, 121 S. Ct. 2151, 2156 (2001)); *see also Poe v. Leonard,* 282 F.3d 123, 132-33 (2d Cir. 2002).

28